### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### Greenbelt Division

| | |
|---|---|
| In re: | Chapter 7 |
| JOSHUA CARIN | Case No.: 21-12418-MCR |
| Debtor. | |
| STEVEN GREENFELD, CHAPTER 7 TRUSTEE, | |
| Plaintiff, | |
| v. | Adv. Pro. No. _____ |
| JOSHUA CARIN, LAWRENCE CARIN, SANDY CARIN WEST, NATHANIEL CARIN, MICHAEL CARIN, STEVEN CARIN HARON, JAMES MAGNO, 33 CANAL LANDING LLC, and JOHN DOES 1-20, | |
| Defendants. | |

### COMPLAINT TO RECOVER PROPERTY OF THE ESTATE AND TO AVOID AND RECOVER PRE-PETITION AND POST-PETITION TRANSFERS

Plaintiff Steven Greenfeld, as Chapter 7 Trustee (**"Plaintiff"** or **"Trustee"**) of the estate of Joshua Carin (**"Debtor"**), by undersigned special counsel, alleges upon knowledge and/or information and belief, as follows:

I.     **NATURE OF THE ACTION**

1.     This is an action brought by the Trustee to recover a bank account of the Debtor with Bank of America (account number last four #9978) (hereinafter, the "**Bank of America**

**Account**"), and various transfers made from the bank account by the Debtor to the Defendants. The Bank of America Account was previously owned jointly by the Debtor, his father Philip Carin, and his mother Roberta Carin; but when his father and mother both passed away in 2019, the Debtor owned the account solely and individually. Prior to the bankruptcy, the Debtor made gifts from the Bank of America Account to his siblings totaling over $200,000. Post-bankruptcy, the Debtor made transfers from the Bank of America Account to certain Defendants without Court approval. Therefore, the Trustee files this complaint for (a) the immediate turnover of the value of property in the Bank of America Account as of April 13, 2021; (b) a full accounting from the Debtor of all transfers he made from the Bank of America Account subsequent to October 2, 2019; (c) the avoidance and recovery of pre-petition fraudulent transfers from the Bank of America Account, pursuant to sections 544, 548 and 550 of the Bankruptcy Code; and (d) the avoidance and recovery of improper post-petition transfers from the Bank of America Account, pursuant to sections 549 and 550 of the Bankruptcy Code.

## II.    <u>JURISDICTION AND VENUE</u>

2.     This Court has jurisdiction over this adversary proceeding, which arises under title 11 and in the Debtor's above-captioned chapter 7 case, pursuant to 28 U.S.C. §§ 157 and 1334(b).

3.     This adversary proceeding is a core proceeding to be heard and determined by this Court pursuant to 28 U.S.C § 157(b)(2) and this Court may enter final orders for matters contained herein.

4.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.     Pursuant to Local Bankruptcy Rule 7012-1(b), the Plaintiff consents to entry of final orders or judgments by the Bankruptcy Judge.

III.    **PARTIES**

6.      On April 13, 2021 (**"Petition Date"**), the Debtor, who is one of the defendants in this adversary action, filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

7.      On the Petition Date, Plaintiff was appointed as the Chapter 7 Trustee in the Debtor's bankruptcy case.

8.      Defendants Lawrence Carin, Sandy Carin West, Nathaniel Carin, Michael Carin, and Steven Carin Haron are siblings of the Debtor.

9.      Defendant James Magno is a CPA, and upon information and belief, was the Debtor's accountant.

10.     Defendant 33 Canal Landing LLC is a limited liability company organized in the State of Delaware, and is partially owned by the Debtor.

11.     Plaintiff is currently unaware of the names and capacities of Defendants sued herein as John Does 1-20, which include other parties who received or benefitted from actual or constructive fraudulent conveyances from the Bank of America Account. Plaintiff will amend this Complaint to allege their names and capacities when ascertained.

IV.    **FACTUAL BACKGROUND**

A.      **The Dischargeability Action and Related Matters**

12.     Prior to filing for bankruptcy, the Debtor was an officer, director, employee, and owner of 30% of the issued and outstanding stock of Geppetto Catering Company, Inc., a Maryland corporation (**"Geppetto"**). On July 3, 2020, the Debtor resigned from all of his positions with Geppetto and relinquished all of his right, title and interest in and to Geppetto.  Geppetto's remaining shareholder, Charles Lenkin (**"Lenkin"**), who owned 70% of Geppetto's issued and outstanding stock, thereby became the sole shareholder of Geppetto.

13.     On September 15, 2020, Geppetto and Lenkin filed an arbitration claim against the Debtor, alleging breach of a non-competition clause in a Geppetto stockholder agreement, breaches of fiduciary duty and duty of loyalty to Geppetto, theft, conversion, and fraud. This claim and other related litigation against the Debtor was stayed by the bankruptcy case.

14.     On May 18, 2021, the Trustee convened a § 341 Meeting of Creditors, but adjourned the meeting to allow for a Rule 2004 examination of the Debtor by the Trustee and counsel to Geppetto and Lenkin.  On July 7, 2021, the Rule 2004 examination commenced, but disputes arose with respect to the Debtor's alleged failure to fully comply with a Consent Order For Rule 2004 Examination of the Debtor [Dkt #29] requiring the production of documents that had been requested from the Debtor in connection with the examination.

15.     On August 18, 2021, Geppetto and Lenkin filed a Dischargeability Complaint against the Debtor, under sections 523(a)(2), 523(a)(4), and 523(a)(6) of the Bankruptcy Code, as well as other claims against the Debtor, his spouse Moira Geronimo-Carin, the Montgomery County Revenue Authority, Keith Miller, and Eric Goldberg, at Adversary Case No. 21-00179.

16.     On September 20, 2021, this Court entered a Consent Order Resolving Debtor's Motion for Protective Order, which among other things, required the Debtor to produce the following documents:

> "Bank statements including electronic copies (if any) of canceled checks and deposit slips of all accounts owned or controlled in whole or in part by Carin and/or Carin's spouse for the period commencing 01/01/18 through the present date … including without limitation all such accounts at … Bank of America"

17.     With respect to Bank of America Account, the Debtor produced only a few monthly statements, but did not produce monthly statements for the time period covering the transfers in this Complaint, and he did not produce copies of any canceled checks or deposit slips.

18.     On December 13, 2021, this Court approved a partial settlement of Adversary Proceeding 21-00179, which among other things, (a) granted Geppetto and Lenkin (together, the "**Geppetto Creditors**") a single, joint non-dischargeable claim of $5.5 million against the bankruptcy estate; (b) required the Debtor to pay the Geppetto Creditors $500,000 from exempt funds, and assign to them his membership interest in Queensbury LLC; and (c) conditionally released the Debtor and his spouse from claims by Geppetto or Lenkin, but not from any claims by the Trustee against the Debtor, his spouse, or any other party.

   **B.**  **The Debtor's Bankruptcy Schedules**

19.     On the Petition Date, the Debtor filed his Schedules of Assets and Liabilities ("**Schedules**") and Statement of Financial Affairs ("**SOFAs**"). The Schedules listed $3,380,493.83 in total assets and $1,577,185.83 in total liabilities, but the Debtor claimed all the assets as exempt and designated the Chapter 7 bankruptcy as a "No Asset" case. Dkt #1, Part 1 at No. 17.

20.     After the initial 341 meeting, the Trustee re-designated the Chapter 7 bankruptcy as an Asset Case, and notified creditors of the deadline to file a proof of claim.  Dkt #33.

21.     On April 27, 2021, the Debtor amended his Schedules to add a number of creditors with contingent, unliquidated, and disputed claims relating to his pre-petition litigation with Geppetto and Lenkin. Dkt #13, Schedule E/F at 4.5, 4.8, and 4.10.

22.     On May 11, 2021, the Debtor amended his Schedules to add a deposit with the American Arbitration Association. Dkt #15, Schedule A/B at 22.

23.     On May 29, 2021, the Debtor amended his Schedules to remove a claim that he had improperly listed against Geppetto and to add a claim for unemployment benefits. Dkt #26, Schedule A/B at 34.

24.     On May 29, 2021, the Debtor amended his SOFAs to add current year wages. Dkt #27, Part 2 at No. 4.

25.     On November 15, 2021, the Debtor amended his SOFAs to remove payments he had improperly alleged to have made to or for the benefit of Geppetto, and property he had improperly alleged to have sold to Geppetto outside the ordinary course of business. Dkt #65, Part 3 at No. 8 and Part 7 at No. 18.

26.     On November 15, 2021, the Debtor amended his Schedules to add federal and state tax refunds. Dkt #66, Schedule A/B at 28.

27.     Finally, on March 4, 2022, the Debtor amended his SOFAs to add the Bank of America Account. Dkt #90, Part 9 at No. 23.

C.     **The Bank of America Account**

28.     The amended Schedules filed on March 4, 2022, which was the Debtor's 7th amendment to his Schedules and SOFAs, incorrectly listed the Bank of America Account as being owned by the Estate of Roberta Carin and incorrectly described the account as a "convenience checking account titled in names of debtor's deceased parents."

29.     The Bank of America Account is a checking account that had previously been owned jointly by the Debtor and the Debtor's parents, Philip Carin and Roberta Carin; but the account was owned solely by the Debtor as of the Petition Date.

30.     The Debtor's father, Philip Carin, passed away on March 29, 2019.

31.     The Debtor's mother, Roberta Carin, passed away on October 2, 2019. On the date of her death, the Bank of America Account had a balance of $23,653.

32.     Roberta Carin's will, Section Fifth, states as follows:

"I hereby confirm my intention that the beneficial interest in all property, real or personal, tangible or intangible (including joint checking or savings

accounts in any bank or saving and loan association), which is registered or held, at the time of my death, jointly in the names of myself and any other person (excluding any tenancy in common), shall pass by right of survivorship or operation of law outside the terms of this Will to such person, if he or she survives me.  To the extent that my intention may be defeated by any rule or law, I give, devise and bequeath all such jointly held property to such other person or persons who shall survive me."

A true and correct copy of the Last Will and Testament of Roberta Carin filed in the Maryland Register of Wills, is attached hereto as **Exhibit A**.

33.     Thus, the Bank of America Account, owned jointly by Roberta Carin and Joshua Carin, passed directly to the Debtor on October 2, 2019 by right of survivorship and by operation of law.

34.     In addition, the Debtor was the sole beneficiary of an account owned by Roberta Carin at Navy Federal Brokerage. On September 21, 2019, Roberta Carin executed an Individual Transfer on Death Account Agreement, which directed Pershing LLC, as clearing agent for Navy Federal Brokerage, to transfer all of her money, securities, and other property in the brokerage account to a new account owned by the "Beneficiary" upon receipt of notice of her death. The Beneficiary identified in the agreement is the Debtor. A true and correct copy of the Individual Transfer on Death Account Agreement is attached hereto as **Exhibit B**.

35.     On October 4, 2019, two days after the death of Roberta Carin, the Bank of America Account owned by the Debtor received a wire transfer of the funds in the Navy Federal brokerage account from Pershing LLC in the amount of $291,789.38. A true and correct copy of the Bank of America Account statement from September 21, 2019 to October 23, 2019 is attached hereto as **Exhibit C**.

36.     Finally, upon information and belief, on March 11, 2020 the Debtor submitted a personal financial statement to Bank of America in connection with a loan application, and listed the Bank of America Account as his own asset.

37.     The Bank of America Account was owned solely by the Debtor on the Petition Date, is property of the Debtor's bankruptcy estate, cannot be exempted by the Debtor, and the value of all funds in the account as of the Petition Date, as well as certain transfers made by the Debtor from the account, as described herein, should be turned over to the Trustee.

**D.     Gifts and Other Transfers from the Bank of America Account**

38.     Prior to the Petition Date, the Debtor made the following transfers from the Bank of America Account:

| Date | Check No. | Amount | Recipient |
|---|---|---|---|
| 11/16/2019 | 1289 | $30,000.00 | Sandra Carin West |
| 11/16/2019 | 1291 | $16,000.00 | Sandra Carin West |
| 11/18/2019 | 1296 | $30,000.00 | Steven Haron |
| 11/18/2019 | 1297 | $16,000.00 | Steven Haron |
| 11/18/2019 | 1298 | $16,000.00 | Larry Carin |
| 11/18/2019 | 1299 | $30,000.00 | Larry Carin |
| 11/25/2019 | 1201 | $30,000.00 | Mike Carin |
| 11/25/2019 | 1202 | $30,000.00 | Nathaniel Carin |
| 12/02/2020 | 1260 | $3,539.98 | Sandra Carin West |

The Debtor also used funds in the account to make estimated federal income tax payments to the IRS in connection with his personal tax obligations, and to pay credit card bills. The Plaintiff is still investigating a payment of $25,489.32 made on a Navy Federal Credit Union visa bill in November 2019.

39.     On the Petition Date, the Bank of America Account had a balance of at least $18,708.

40.     After the Petition Date, the Debtor made the following transfers from the Bank of America Account:

| Date | Check No. | Amount | Recipient |
|------|-----------|--------|-----------|
| 10/18/2021 | 1269 | $14,568.80 | James Magno |
| 01/28/2022 | 1273 | $2,000.00 | Canal Landing |

As a result of these post-petition transfers, the Bank of America Account had a balance of only $2,896.09 as of September 22, 2022.

## COUNT I

### (Turnover of Property and Documents to the Estate Pursuant to 11 U.S.C. § 542)
### Trustee v. Debtor

41.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs.

42.     As set forth above, the Bank of America Account is property of the estate.

43.     The Debtor has not exempted the Bank of America Account under section 522 of the Bankruptcy Code, and he did not disclose the account properly in his Schedules.

44.     On the Petition Date, the Bank of America Account had a balance of at least $18,708.

45.     Pursuant to § 542(a) of the Bankruptcy Code, Plaintiff is entitled to recover the value of the Bank of America Account as of the Petition Date, for the benefit of the bankruptcy estate and its creditors, plus interest and the costs of this action.

46.     In addition, pursuant to § 542(e) of the Bankruptcy Code, Plaintiff is entitled to any books, documents, records, and papers from the Debtor relating to the Bank of America Account so the Trustee can determine if additional amounts are due from the Debtor and/or the other Defendants.

## COUNT II

**(Avoidance and Recovery of Fraudulent Transfers Pursuant to
11 U.S.C. § 548(a)(1)(B) and 550)
Trustee v. Lawrence Carin, Sandy Carin West, Nathaniel Carin, Michael Carin,
Steven Carin Haron and John Does 1-20**

47.     Plaintiff repeats and realleges each and every allegation contained in the preceding

paragraphs.

48.     Within the two years prior to the Petition Date, the Debtor made transfers from the

Bank of America Account to each of his siblings, in the following amounts, as well as to John

Does 1-20 in unknown amounts:

| | | |
|---|---|---|
| a. | Lawrence Carin | $46,000.00 |
| b. | Sandy Carin West | $49,539.98 |
| c. | Nathaniel Carin | $30,000.00 |
| d. | Michael Carin | $30,000.00 |
| e. | Steven Carin Haron | $46,000.00 |
| | Total: | $201,539.98 |

(collectively, the "**Fraudulent Transfers**").

49.     The Fraudulent Transfers were transfers of the Debtor's property.

50.     The Debtor received no consideration or received less than reasonably equivalent

value on account of the Fraudulent Transfers.

51.     At the time of the Fraudulent Transfers, the Debtor (a) was insolvent or became

insolvent as a result of the transfer; and/or (b) intended to incur, or reasonably should have believed

that he would incur, debts beyond his ability to pay as such debts matured.

52.     Therefore, the Fraudulent Transfers are voidable under § 548(a)(1)(B) of the

Bankruptcy Code.

53.     Plaintiff may recover each of the Fraudulent Transfers in the amounts set forth

above, plus interest from this date forward, from Lawrence Carin, Sandy Carin West, Nathaniel

Carin, Michael Carin, Steven Carin Haron, and John Does 1-20 as initial, immediate and/or mediate transferees, under § 550 of the Bankruptcy Code.

## COUNT III

**(Avoidance and Recovery of Fraudulent Transfers Pursuant to
11 U.S.C. §§ 544(b) and 550, and Maryland Code § 15-201, *et seq*.)
Trustee v. Lawrence Carin, Sandy Carin West, Nathaniel Carin, Michael Carin,
Steven Carin Haron, and John Does 1-20**

54.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs.

55.     Pursuant to § 544(b) of the Bankruptcy Code, a trustee may avoid any transfer of an interest of the debtor in property that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code.

56.     Within the three years prior to the Petition Date, the Debtor made the Fraudulent Transfers of the Debtor's property interests.

57.     The Debtor received no consideration or received less than reasonably equivalent value on account of the Fraudulent Transfers.

58.     At the time of the Fraudulent Transfers, the Debtor (a) was insolvent or became insolvent as a result of the transfer; and/or (b) intended to incur, or reasonably should have believed that he would incur, debts beyond his ability to pay as such debts matured, in accordance with §§ 15-204 and 15-206 of the Maryland Code.

59.     At all relevant times, the Debtor had actual creditors holding both matured and unmatured secured claims allowable with the meaning of §§ 502 and 544(b) of the Bankruptcy Code and §§ 15-209 and 15-210 of the Maryland Code.

60.     Therefore, the Fraudulent Transfers are voidable under the Bankruptcy Code and Maryland state law.

61.     Plaintiff may recover each of the Fraudulent Transfers in the amounts set forth above, plus interest from this date forward, from Lawrence Carin, Sandy Carin West, Nathaniel Carin, Michael Carin, Steven Carin Haron, and John Does 1-20 as initial, immediate and/or mediate transferees, under § 550 of the Bankruptcy Code.

## COUNT IV

**(Avoidance and Recovery of Unauthorized Post-Petition
Transfers Pursuant to 11 U.S.C. §§ 549(a) and 550)
Trustee v. James Magno and 33 Canal Landing LLC**

62.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs.

63.     After the Petition Date, the Debtor made transfers from the Bank of America Account, as follows:

|     |                      |             |
| --- | -------------------- | ----------- |
| a.  | James Magno          | $14,568.80  |
| b.  | 33 Canal Landing LLC | $2,000.00   |
|     | Total:               | $16,568.80  |

(collectively, the "**Unauthorized Post-Petition Transfers**").

64.     The Unauthorized Post-Petition Transfers were transfers of the Debtor's property, made after the commencement of the bankruptcy case.

65.     The Unauthorized Post-Petition Transfers were not approved by the court or authorized by the Bankruptcy Code.

66.     Plaintiff may recover the Unauthorized Post-Petition Transfers in the amounts set forth above, plus interest from this date forward, from Janes Magno and 33 Canal Landing LLC as initial, immediate and/or mediate transferees, under § 550 of the Bankruptcy Code.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests entry of judgment on the Complaint as follows:

A.      On Count I, awarding Plaintiff judgment, pursuant to section 542 of the Bankruptcy Code, against Joshua Carin for turnover of $18,708 plus interest and costs; and all books, documents, records, and papers relating to the Bank of America Account;

B.      On Counts II and III, awarding Plaintiff judgment, pursuant to sections 544, 548, and 550 of the Bankruptcy Code and section 15-201 of the Maryland Code, against Lawrence Carin, Sandy Carin West, Nathaniel Carin, Michael Carin, Steven Carin Heron, and John Does 1-20 in the amounts they each received in Fraudulent Transfers, plus interest and costs;

C.      On Count IV, awarding Plaintiff judgment, pursuant to sections 549 and 550 of the Bankruptcy Code, against James Magno and 33 Canal Landing LLC, in the amounts they each received in Unauthorized Post-Petition Transfers, plus interest and costs; and

D.      Granting such other and further relief as this Court may decree just and proper.

Date:   April 11th, 2023                   Respectfully submitted,

                                           HIRSCHLER FLEISCHR,
                                           A PROFESSIONAL CORPORATION

                                           */s/ Lawrence A. Katz*
                                           Lawrence A. Katz (Md. Federal Bar No. 02526)

                                           */s/David I. Swan*
                                           David I. Swan (Md. Federal Bar No. 28785)
                                           1676 International Drive, Suite 1350
                                           Tysons, Virginia 22102
                                           Telephone:  703.584.8900
                                           dFacsimile:  703.584.8901
                                           E-mail:  lkatz@hirschlerlaw.com
                                                        dswan@hirschlerlaw.com

                                           *Special Counsel for Steven Greenfeld, Chapter 7
                                           Trustee*

15965233.2  047274.00001